UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **JOSHUA MICHAEL HAVENS** | **CIVIL ACTION NO. 23-1251** |
| **VS.** | **SECTION P** |
| | **JUDGE TERRY A. DOUGHTY** |
| **MOREHOUSE PARISH JAIL, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Plaintiff Joshua Michael Havens, a pre-trial detainee at Morehouse Parish Jail proceeding pro se and in forma pauperis, filed this proceeding on approximately September 8, 2023, under 42 U.S.C. § 1983. He names the following defendants: Morehouse Parish Jail, Nurse Pennington, Deputy Wilson, and Deputy Huey.[1]

For reasons that follow, the Court should dismiss Plaintiff's claims against Morehouse Parish Jail and Nurse Pennington. The Court should retain Plaintiff's remaining claims against Deputy Wilson and Deputy Huey.

## Background

Plaintiff claims that on approximately September 14, 2022, Nurse Pennington "had [him] wrongfully placed in lockdown for not taking blood pressure medication outside [his] common use." [doc. # 11, p. 1].

Plaintiff claims that in lockdown—which he also appears to refer to as "suicide watch"—Deputy Wilson and Deputy Huey stripped him of all his clothes and then sprayed him in the

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

testicles with mace "for kicking the door." [doc. #s 1, p. 4; 11, p. 1]. He also suggests that Deputies Wilson and Huey sprayed him in the eyes with mace. [doc. # 11, p. 1]. His eyes were "swollen shut[.]" *Id.* Plaintiff maintains that he did not pose a threat to any person during this incident and that he was not convicted of any infraction. *Id.* at 2.

In lockdown, Plaintiff "could not sit down" because of the mace on his testicles, and he "only had bare metal" on which to sit. [doc. # 11, p. 1].

Plaintiff claims that he was not provided a shower to rinse the mace for five days after he was sprayed. [doc. # 1, pp. 4-5]. He "had access to the water fountain and toilet, but [he] could not see to wash [his] face." [doc. # 11, p. 1]. He could not "cleanse" himself. *Id.*

Plaintiff claims that he was not provided a paper gown or any other clothing in the suicide watch cell; as above, he was naked. [doc. # 1, p. 4]. The temperature registered approximately 50 degrees Fahrenheit. [doc. # 11, p. 1]. He also lacked a mat on which to sleep; he only had "bare metal[.]" *Id.* He "stayed awake crying, standing with [his] eyes swollen shut . . . ." *Id.* He writes: "By the 5th day, I had accumulated enough styrofoam trays from chow to make bedding to at least sit on . . . ." *Id.*

Plaintiff states that the mace caused him blisters for five months [doc. # 1, p. 4]. When he was released from lockdown into "general population," he used ointment to ease his pain. [doc. # 11, p. 2]. He contracted a fungal infection. *Id.*

For relief, Plaintiff seeks: (1) "mandatory regulations for staff to shower inmates after macing"; (2) gowns for inmates to wear "if on suicide watch"; and (3) monetary relief. [doc. # 1, p. 5].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis*,* his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

3

*Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926

F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Morehouse Parish Jail**

Plaintiff names Morehouse Parish Jail as a defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24.

Morehouse Parish Jail does not qualify as a juridical person; accordingly, the Court should dismiss Plaintiff's claims against Morehouse Parish Jail.

**3. Excessive Force**

Plaintiff claims that Deputy Wilson and Deputy Huey stripped him of all his clothes and then sprayed him in the eyes and testicles with mace "for kicking the door." [doc. #s 1, p. 4; 11, p. 1]. Plaintiff maintains that he did not pose a threat to any person during this incident and that he was not convicted of any infraction. [doc. # 11, p. 2].

"[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson* 576 U.S. 389, 396-97 (2021). Various factors "may bear on the reasonableness or unreasonableness of the force used":

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397. "In determining objective reasonableness, 'a court must also account for the legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in th[e] judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security.'" *Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 317 (5th Cir. 2021) (*quoting Kingsley*, 576 U.S. at 397) (internal quotation marks omitted).

Here, Plaintiff does suggest that Wilson and Huey sprayed him because he was kicking a door; conversely though, Plaintiff does not definitively concede that he did kick the door. In addition, that (i) Plaintiff allegedly did not pose a threat to anyone and (ii) Wilson and Huey had time to order Plaintiff to strip—which Plaintiff did—before utilizing force suggests that Wilson and Huey perceived little threat from Plaintiff, that they had little need to use force, that Plaintiff was not actively resisting, and that they made little effort to temper or limit the amount of force. Further, that the officer sprayed Plaintiff in the testicles suggests the force was not objectively reasonable. Plaintiff also indicates he suffered a greater-than-de minimis injury.

Construing Plaintiff's allegations liberally and in his favor at this early stage of the proceeding, the Court should retain the excessive force claims against Wilson and Huey.

**4. Decontamination After Mace**

Plaintiff claims that for five days after Wilson and Huey sprayed him with mace, he was not provided a shower to rinse the mace. [doc. # 1, pp. 4-5]. He "had access to the water fountain and toilet, but [he] could not see to wash [his] face." [doc. # 11, p. 1]. He could not "cleanse" himself. *Id.* He "stayed awake crying, standing with [his] eyes swollen shut . . . ." *Id.* The mace caused him blisters for five months, and he contracted a fungal infection. [doc. #s 1, p. 4; 11, p. 2].

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is

not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff plausibly alleges that he had a serious medical need for decontamination and that Wilson and Huey were deliberately indifferent to a substantial risk of serious harm when they failed to provide decontamination measures.

Wilson and Huey did not allow Plaintiff to shower for five days after spraying him with mace. Plaintiff did have a water fountain in lockdown. And the Fifth Circuit has stated that pepper-spray "'[d]econtamination consists primarily of flushing the eyes with water.'" *Hoke v. Anderson*, 799 F. App'x 224, 226 (5th Cir. 2020) (*quoting Wagner v. Bay City*, 227 F.3d 316, 319 n.1 (5th Cir. 2000)); *see Amos v. Jefferson*, 861 F. App'x 596, 602 (5th Cir. 2021) (noting that a nurse explained to a prisoner that the proper method to decontaminate after being sprayed with a chemical agent is to use running water, which was available in the prisoner's cell).[3]

---

[3] *See also Martin v. Seal*, 510 F. App'x 309, 315-16 (5th Cir. 2013) ("[A]fter each round of chemical treatment, they examined Martin, determined that he was not injured, and offered him a shower. Such actions counter Martin's allegations of deliberate indifference."); *King v. City of Bossier City*, 2007 WL 1791215, at *4 (W.D. La. June 19, 2007) ("[T]o the extent plaintiff claims that he was provided inadequate medical care following the alleged multiple bursts of pepper spray . . . plaintiff was allowed to rinse out his eyes which shows that defendants were not deliberately indifferent . . . ."); *Ward v. Shaw*, 2015 WL 5712812, at *3 (S.D. Miss. Sept. 29, 2015) (finding no deliberate indifference where an inmate was allowed to shower twice after the administration of pepper spray, reasoning, "although his treatment may not have been the best that money can buy, this course of treatment did not demonstrate deliberate indifference to his

However, Plaintiff "could not see to wash [his] face." [doc. # 11, p. 1]. While perhaps Plaintiff could not see *because* he did not wash his face with water from the fountain, there is also no indication of the extent to which he could use the water. In other words, it is plausible—construing the allegations liberally and in Plaintiff's favor—that he was not aware of the water fountain or how to operate it because he could not see. In addition, there is no indication that the water fountain provided the means by which to wash the contaminant from Plaintiff's testicles.

Finally, while Plaintiff does not allege that he asked Wilson and Huey for care, Wilson and Huey were the ones who sprayed Plaintiff with mace in the eyes and testicles while he was nude and then abandoned him without providing or arranging aid. Thus, it is plausible that they *knew* of a substantial risk of serious harm.[4]

### 5. Conditions of Confinement

The Due Process Clause of the Fourteenth Amendment prohibits the punitive confinement of a pretrial detainee because, by definition, the guilt of a detainee has not been adjudicated. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Courts must "determin[e] whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word[]" or whether the conditions are "but an incident of some other legitimate governmental purpose." *Bell*, 441 U.S. at 538. To determine whether the condition is a punishment, and therefore unconstitutional, courts must ascertain whether the

---

medical needs."); *Hamilton v. Orr*, 2023 WL 2878820, at *4 (M.D. La. Mar. 22, 2023), *report and recommendation adopted,* 2023 WL 2868008 (M.D. La. Apr. 10, 2023) (finding that a nine-hour delay between when a prisoner was sprayed with a chemical agent and when he was allowed to shower did not state a claim of constitutional dimension).

[4] *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

9

"particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective." *Id.* at 539. "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id.*

"'There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.'" *Bell*, 441 U.S. at 539 (*quoting Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). "[T]he fact that [] detention interferes with the detainee's understandable desire to live as comfortably as possible . . . does not convert the conditions or restrictions of detention into 'punishment.'" *Id.* at 537. "Courts must be mindful that [inquiries into whether conditions are arbitrary, purposeless, or punitive] spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility." *Id.* at 539. Courts should in certain circumstances "defer to the informed discretion of prison administrators because the realities of running a corrections institution are complex and difficult, courts are ill equipped to deal with these problems, and the management of these facilities is confided to the Executive and Legislative Branches, not to the Judicial Branch." *Id.* at n.2.

A. <u>Defendants Wilson and Huey</u>

To encapsulate, Plaintiff claims that Deputies Wilson and Huey stripped him of all his clothes, sprayed him with mace in the eyes and testicles, and abandoned him for five days in a lockdown cell which registered approximately fifty degrees Fahrenheit without a mat on which

to sit or sleep, with lingering mace in his eyes and on his testicles which caused him to remain awake crying, and without adequate water with which to decontaminate himself.[5]

Plaintiff plausibly alleges that the conditions accompanying his pre-trial detention were arbitrary, purposeless, and amounted to punishment. In addition, the Court cannot determine whether defendants Wilson and Huey harbored a legitimate government objective before allowing them to proffer their reasons for imposing the alleged conditions. The Court should therefore retain this claim against Wilson and Huey.

B. Nurse Pennington

Plaintiff alleges only that Pennington was responsible for first placing him in lockdown. [doc. # 11, p. 1].

Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. See *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a

---

[5] *See generally Jackson v. Byrd*, 273 F.3d 1095 (5th Cir. 2001) ("[He] has also raised an Eighth Amendment claim insofar as he has alleged that several of the defendants ordered him to remain naked in a cold cell for fourteen hours in retaliation for filing a false complaint of sexual harassment against one of the female correction officers."); *Gregory v. McKennon*, 430 F. App'x 306 (5th Cir. 2011) (allegations that a prisoner was strip-searched and left completely naked in small shower stall, about five feet from open door, and thereby exposed to freezing temperatures for approximately five hours, averred facts which if developed might have stated a nonfrivolous § 1983 claim); *Cardona v. Taylor*, 828 F. App'x 198 (5th Cir. 2020) (a prisoner stated a claim where he alleged that officers ordered him back into a cell filled with tear gas, refused to provide supplies for decontamination, denied him medical care for exposure to the tear gas, and declined to house him in a cell free of tear gas).

civil rights cause of action."). "A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Texas Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008).

Here, Plaintiff does not plausibly allege that Nurse Pennington caused the alleged conditions, knew of the conditions, or was otherwise involved in confining him under, or failing to remove him from, the conditions. At best, he pleads only that one event preceded the other: Pennington's action preceded Wilson and Huey's action/inaction. *See Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009) ("The *post hoc ergo propter hoc* fallacy assumes causality from temporal sequence. It literally means 'after this, because of this' It is called a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship.").

Pennington's alleged involvement is too attenuated to establish plausible causation. The Court should therefore dismiss Plaintiff's claims against Pennington.[6]

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Joshua Michael Havens' claims against Morehouse Parish Jail and Nurse Pennington be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or

---

[6] Plaintiff does not allege that Pennington deprived him of procedural due process before placing him in lockdown.

12

response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 29th day of December, 2023.

_____
Kayla Dye McClusky
United States Magistrate Judge